IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DENNIS MAYKOWSKI,

        Plaintiff,

   vs.                        Civil Action 2:13-cv-566
                                    Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


**OPINION AND ORDER**

## I.  Background

    This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for a period of disability and disability insurance benefits.  This matter is now before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), for consideration of *Plaintiff's Statement of Specific Errors* ("*Statement of Errors*"), Doc. No. 17, and *Defendant's Memorandum in Opposition*, Doc. No. 24.  Plaintiff has not filed a reply.

    Plaintiff Dennis Maykowski filed his application for benefits on March 9, 2010, alleging that he has been disabled since October 12, 2007.  *PAGEID* 336.  The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

    An administrative hearing was held on December 1, 2011, at which plaintiff, represented by counsel, appeared and testified, as did Carl

Hartung, who testified as a vocational expert.  *PAGEID* 218.  In a decision dated January 4, 2012, the administrative law judge concluded that plaintiff was not disabled from October 12, 2007, through the date of the administrative decision.  *PAGEID* 213.  That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 23, 2013.  *PAGEID* 45.

Plaintiff was 41 years of age on the date of the administrative law judge's decision.  *See PAGEID* 213, 336.  Plaintiff has at least a high school education, is able to communicate in English, and has past relevant work as a carpenter; joiner; and glazier, stained glass.  *PAGEID* 211-12.  Plaintiff was last insured for disability insurance purposes on June 30, 2012.  *PAGEID* 203.  He has not engaged in substantial gainful activity since his alleged onset date of October 12, 2007.  *Id*.

## II.  Medical Evidence[1]

Plaintiff has been awarded an 80 percent service connected disability by the U.S. Department of Veterans Affairs due to posttraumatic stress disorder, impairment of the clavicle or scapula, and limited motion of the ankle.  *PAGEID* 1007.

Plaintiff injured his right shoulder while on active duty with the Army National Guard in Iraq.  *PAGEID* 611.  An April 23, 2008 MRI of the right shoulder revealed tears of the long head of the biceps muscle and the supraspinatus muscle.  *PAGEID* 708-09.  Plaintiff

---

[1] The Court's discussion of the medical evidence is limited to the issues raised in plaintiff's *Statement of Errors*.

2

underwent arthroscopic surgery in February 2009 to re-attach his right biceps to bicipital groove and repair torn tendons. *PAGEID* 895, 996. Plaintiff's rotator cuff was not repaired because no pathology was found at the time of the arthroscopy. *PAGEID* 680.

Plaintiff continued to experience shoulder pain after surgery. *See e.g.*, *PAGEID* 613, 783, 84.

Plaintiff underwent occupational therapy beginning in August 2009. *PAGEID* 665, 651-52, 656-57, 821. By October 5, 2009, plaintiff had "primarily achieved" the goals of increasing active range of motion; having minimal to no difficulty with activities of daily living; being independent and compliant with his home exercise program, and decreasing scar adhesions by 50 to 75 percent. *PAGEID* 823.

On October 13, 2010, plaintiff had full range of motion of the shoulder, but with pain. *Id*. A November 15, 2010 MRI showed no rotator cuff tear. *PAGEID* 901. *See also PAGEID* 981 ("Mild degenerative change in the acromioclavicular joint. No acute abnormality."). December 13, 2010 x-rays revealed a normal right elbow area. *PAGEID* 978-79. A right shoulder exam on December 16, 2010, revealed decreased range of motion secondary to pain. *PAGEID* 1001. Plaintiff reported that his shoulder was feeling better on December 17, 2010. *PAGEID* 903.

Plaintiff also reported pain in his knees since at least 2008. *Seem e.g.*, *PAGEID* 581, 453-54, 783. An April 23, 2008 MRI of the right knee showed a horizontal tear of the posterior horn of the

3

medial meniscus associated with a tiny meniscal cyst.  *PAGEID* 644,
709.  An x-ray of the right knee on March 12, 2008, was normal.
*PAGEID* 644.

Plaintiff began treatment with Edwin H. Season, M.D., on May 28,
2009, for bilateral knee pain.  *See PAGEID* 644.  A July 1, 2009 MRI of
the left knee showed no internal derangement, no effusion, and
possible degeneration of the posterior horn of the lateral meniscus.
*PAGEID* 663-64, 708, 833, 984-85.  Plaintiff underwent physical therapy
for bilateral knee pain in 2009.  *PAGEID* 649, 661, 669-674

A November 4, 2009 x-ray of the right knee was normal.  *PAGEID*
644, 984.  A November 24, 2009 MRI of the right knee showed "no
discrete surgical condition but did show old medial meniscus tear."
*PAGEID* 644.  *See also PAGEID* 706-07, 804, 835, 983.  An April 23, 2010
MRI revealed a torn medial meniscus of the right knee.  *PAGEID* 783.
Dr. Season recommended exploratory arthroscopic surgery.  *PAGEID* 644.

Although plaintiff was scheduled for the recommended arthroscopic
surgery in May 2010, *PAGEID* 802-03, the surgery was cancelled due to
neurodermatitis.  *PAGEID* 783, 967-68.  Dr. Season examined plaintiff
on June 25 and again on October 13, 2010, and noted that the knee
lesions were still present.  *PAGEID* 783, 794.  A November 15, 2010 MRI
of the right knee showed a degenerative tear of the medial meniscus.
*PAGEID* 900, 981-82.  In December 2010, Dr. Season opined that
plaintiff was not a candidate for surgery and ordered bilateral knee
braces and a cane.  *PAGEID* 901, 903.  Plaintiff was fitted with a
right adjustable orthotic grip cane on December 22, 2010.  *PAGEID* 902.

4

On June 10, 2008, Dr. Season opined that plaintiff was "unemployed for 3 months due to orthopedic problems." *PAGEID* 303.  On December 2, 2009, Dr. Season opined that plaintiff is "unable to work 12-2-09 thru 3-1-10." *PAGEID* 608, 1012.  Dr. Season also opined that plaintiff had a "[d]isability from 3-3-10 thru 6-2-10," *PAGEID* 609, 1011, was "disabled and unable to work for next 3 months" beginning June 2, 2010. *PAGEID* 1010. According to Dr. Season, plaintiff had "[t]otal disability" from March 15, 2011 thru September 14, 2011. *PAGEID* 1009.

Plaintiff also treated with Jessica D. Hershenson, M.D., for pain in his knees, biceps and right elbow.  *PAGEID* 647, 699-700.  On April 22, 2009, plaintiff was found to have 5/5 strength in the upper and lower extremities and a normal gait.  *Id*.  On June 3, August 3, and October 14, 2009, Dr. Hershenson opined that, due to medical care regarding "ongoing orthopedic issues," plaintiff was "unable to work" and would be reevaluated every two months regarding his abilities. *PAGEID* 605-07, 676, 692, 818.

December 13, 2010 x-rays of plaintiff's ankles were normal. *PAGEID* 979-80.  On January 20, 2010, plaintiff reported swelling in his ankles bilaterally with overuse and occasional sharp pain on the inside of his elbow over the biceps tendon.  *PAGEID* 638.  Plaintiff sprained his ankle on March 12, 2011, and received a Schanz wrap, crutches, and pain medication.  *PAGEID* 1003-006.

5

A December 13, 2010 x-ray of plaintiff's hip showed a small cyst in the left femoral neck and minimal narrowing of the left hip joint space.  *PAGEID* 980-81.

Andrew J. Iams, M.D., examined plaintiff on behalf of the Veterans Administration on September 9, 2009.  Dr. Iams opined that plaintiff "is no longer able to tolerate work that involves heavy labor or activity such as hammering, squatting, overhead lifting, or reaching.  He is not able to walk comfortably for more than a short distance and prolonged standing on his feet would aggravate his pain."  *PAGEID* 661.  Dr. Iams further opined that plaintiff's "orthopedic conditions do not prevent [plaintiff] from doing clerical or sedentary work in an office setting."  *Id.*

On June 26, 2010, W. Jerry McCloud, M.D., reviewed the record on behalf of the state agency and completed a residual functional capacity assessment.  *PAGEID* 297-98.  According to Dr. McCloud, plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for a total of about six hours in an eight-hour workday, and sit for a total of about six hours in an eight-hour workday.  *PAGEID* 297.  Plaintiff could occasionally balance, stoop, kneel, crouch, crawl, or climb ladders, ropes, or scaffolds, and would be limited to occasional reaching with the right arm due to right shoulder tendonitis, status post biceps tenodesis.  *PAGEID* 298.

Raheela Ayub, M.D., M.P.H., examined plaintiff for the Veterans Administration on December 13, 2010. *PAGEID* 869-75. According to Dr. Ayub, plaintiff

> is able to secure and maintain substantially gainful employment. He can engage in sedentary employment. For physical employment, limitations that he will require for his right shoulder would include no overhead reaching or lifting greater than 20 lbs with that arm. For his knee conditions, he would have to limit continuous standing to less than 15 minutes with no pivoting or squatting.

*PAGEID* 875.

Gerald Klyop, M.D., also reviewed the record on behalf of the state agency and, on January 13, 2011, affirmed Dr. McCloud's assessment. *PAGEID* 310.

Psychiatrist Sreeramulu R. Vaka, M.D., evaluated plaintiff for the Veterans Administration on July 6, 2009, and diagnosed posttraumatic stress disorder, with depression and anxiety, and marijuana abuse. *PAGEID* 635.

On July 14, 2010, plaintiff was consultatively psychologically evaluated by Sudhir Dubey, Psy.D., on behalf of the state agency. *PAGEID* 713-18. Dr. Dubey assigned a global assessment of functioning score ("GAF") of 55[2] and diagnosed posttraumatic stress disorder; cannabis abuse; and major depression, recurrent, moderate severity.

---

[2]

> "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning . . . ."

*Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 436 n.1 (6th Cir. 2012).

7

*PAGEID* 717.  According to Dr. Dubey, plaintiff had no impairment in his ability to understand, remember, and follow simple instructions; maintain attention, concentration, persistence, and pace to perform simple repetitive tasks; understand and follow complex instructions; and perform complex tasks.  *PAGEID* 718.  Dr. Dubey opined that plaintiff had moderate impairments in his ability to relate to others, including fellow workers and supervisors, and to withstand the stress and pressure associated with day-to-day work activity.  *Id*.

Katherine Fernandez, Psy.D., reviewed the record for the state agency and completed a mental residual functional capacity assessment on August 3, 2010.  *PAGEID* 298-99.  According to Dr. Fernandez, plaintiff had no limitations in the areas of sustained concentration and persistence.  *PAGEID* 299.

Plaintiff was evaluated by psychologist Christopher L. Ray, Ph.D., on behalf of the Veterans Administration on December 7, 2010.  *PAGEID* 876-94.  Dr. Ray diagnosed posttraumatic stress disorder and depressive disorder, NOS.  *PAGEID* 889.  Dr. Ray opined that plaintiff's "concentration deficits could at times lower his work productivity."  *PAGEID* 892.  Plaintiff's "hypervigilance makes him distrustful, which interferes with social relationships."  *Id*.  Plaintiff's "irritability makes it hard to interact well with co-workers and supervisors" and his "sleep deficits would also lower his productivity."  *Id*.  Further, plaintiff's "sleep deficits, hypervigilance, and concentration problems may interfere with his capacity to focus and stay organized at work."  *PAGEID* 893.

8

### III. Administrative Hearing

Plaintiff testified at the December 1, 2011 administrative hearing that he experiences pain in his shoulder, biceps, knees, ankles and left hip socket. *PAGEID* 240. He takes ibuprofen and Tylenol a couple of time a week for pain and he tries to limit movement. *PAGEID* 241-42.

Plaintiff testified that he did not recover full use of his right arm after the February 2009 arthroscopic surgery and that his shoulder hurt more after the surgery than before. *PAGEID* 244. Plaintiff "can't bear any weight" with his right arm and is limited to lifting "probably five pounds." *PAGEID* 244-45, 252. Plaintiff has "a lot of pain" when he raises his arm above his chest and he is sometimes awakened by pain. *Id*. He can no longer sand wood Because of shoulder pain and even moving a computer mouse causes pain. *PAGEID* 244.

Plaintiff testified that he cannot stand for more than five or 10 minutes because of right knee pain; he has difficulty pivoting and turning. *PAGEID* 246. He uses a cane "probably about 90 percent of the time," although he forgot to bring the cane to the administrative hearing because he was nervous. *Id*. Plaintiff is able to stand for "no more than a minute or two" before needing to walk or sit down; he can walk for no more than 10 minutes. *PAGEID* 251. Plaintiff "can only tolerate any given position for probably five or 10 minutes" before needing to change position. *PAGEID* 252.

9

Plaintiff also testified that he has swelling in both ankles and that his left ankle will give out on him due to weakness. *PAGEID* 246.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity eventually determined by the administrative law judge. *PAGEID* 233-34, 253-55. According to the vocational expert, such an individual could not perform plaintiff's past relevant work as a carpenter; joiner; or glazier, stained glass, but could perform such light jobs as crossing guard and usher. *Id.*

## IV. Administrative Decision

The administrative law judge found that plaintiff's severe impairments consist of right shoulder rotator cuff tendinitis and tearing, right knee medial meniscus tearing, bilateral ankle strains, a left knee strain, degenerative joint disease of the left hip, neurodermatitis, a posttraumatic stress disorder, a major depressive disorder, cannabis dependence and hallucinogen abuse, and a cannabis-induced psychotic disorder with delusions. *PAGEID* 203. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b), except
> he is limited to lifting and carrying 20 pounds
> occasionally and 10 pounds frequently, standing and walking
> a total of 6 hours in an 8-hour workday, sitting for a
> total of 6 hours in an 8-hour workday, and pushing and
> pulling with his extremities without limitation, subject to
> the weight and frequency restrictions limiting his capacity
> to lift and carry. He is also limited to occasional
> climbing of ladders, ropes and scaffolds and ramps and

10

stairs, as well as to occasional balancing, stooping, kneeling, crouching, and crawling and occasional reaching overhead, in front, and laterally with his right upper extremity. Mentally, the claimant is able to perform simple, routine, repetitive tasks involving occasional, superficial interaction with coworkers, supervisors, and the general public. He can perform work involving no strict time or production demands and involving no extended attention and concentration, in a work environment characterized by relatively static work processes and procedures.

*PAGEID* 204-07. Although this RFC would preclude plaintiff's past relevant work as a carpenter; joiner; and glazier, stained glass, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the national economy, including such jobs as crossing guard and usher. *PAGEID* 211-13. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from October 12, 2007, through the date of the administrative decision. *PAGEID* 213.

**V. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y*

11

*of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

Plaintiff's *Statement of Errors* challenges the administrative law judge's RFC determination. *Statement of Errors*, p. 9. In his challenge to the RFC determination, plaintiff also argues that the administrative law judge erred in evaluating the opinions of Dr. Ayub, Dr. Season and Dr. Hershenson and in "fail[ing] to incorporate proven restrictions . . . in the hypothetical questions posed to the vocational expert." *Id*. at p. 13.

The Court first addresses plaintiff's argument that the administrative law judge erred in evaluating the opinion of Dr. Ayub. *Statement of Errors*, pp. 10-13. An administrative law judge is required to evaluate every medical opinion, regardless of its source. 20 C.F.R. § 404.1527(c). However, not every medical opinion is treated equally; the Commissioner's regulations describe three

12

classifications for acceptable medical opinions: (1) nonexamining sources; (2) nontreating sources (or examining sources); and (3) treating sources.  As a one-time examiner, Dr. Ayub is properly classified as a nontreating source.  *See* 20 C.F.R. § 404.1502 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant].").

The Social Security Administration accords the greatest weight to the opinions of treating sources; if an administrative law judge does not give "controlling weight" to the medical opinion of a treating source, he must provide "good reasons" for discounting that opinion.  *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).  "However, this requirement only applies to *treating* sources."  *Ealy*, 594 F.3d at 514 (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (emphasis in original)).  With regard to nontreating sources such as Dr. Ayub, "the agency will simply '[g]enerally [] give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined'" him.  *Id.* (quoting 20 C.F.R. § 404.1527(d)(1)).  *See also Smith*, 482 F.3d at 875.  In determining how much weight to give the opinion of a nontreating source, an administrative law judge should consider such factors as "the evidence that the physician offered in support of h[is] opinion,

13

how consistent the opinion is with the record as a whole, and whether the physician was practicing in h[is] specialty." *Ealy*, 594 F.3d at 514 (citing 20 C.F.R. § 404.1527(d)).

Dr. Ayub examined plaintiff on December 13, 2010. *PAGEID* 869-75. Upon examination, plaintiff's knees had "[n]o warmth, -crepitus, -tenderness, -effusion. Negative anterior and posterior drawer, Lachman's, and McMurray's. The knee[s] [are] stable to various and valgus stress." *PAGEID* 874. Plaintiff's right shoulder was "mildly tender over rotator cuff and lateral upper arm, -effusion, -warmth; cross over test positive. Speeds test positive." *PAGEID* 873. Dr. Ayub found "objective evidence of [joint] pain with motion," but there "was no weakened movement with varying resistance." *Id*. Plaintiff had a normal gait and required no assistive devices. *PAGEID* 872. Dr. Ayub opined that plaintiff

> is able to secure and maintain substantially gainful employment. He can engage in sedentary employment. For physical employment, limitations that he will require for his right shoulder would include no overhead reaching or lifting greater than 20 lbs with that arm. For his knee conditions, he would have to limit continuous standing to less than 15 minutes with no pivoting or squatting.

*PAGEID* 875.

The administrative law judge evaluated Dr. Ayub's opinion, but afforded "little weight" to the opinion:

> The opinions of Drs. Edwin Season (Exhibits 3F/11F), Andrew Iams (Exhibits 4F and 7F pp. 48-50), and Raheela Ayus [sic] (Exhibit 8F p. 33), are given little weight because these opinions are inconsistent with other credible medical opinion evidence and are inconsistent with the greater weight of the medical evidence of record. They are not tied to specific supporting objective findings, and there

14

is a lack of each physician's own clinical data sufficiently and adequately to support each respective opinion. Further, the undersigned notes that there was an insufficiently regular or longitudinal treating relationship for the opinions of these sources to constitute treating source opinions.

*PAGEID* 208.

The administrative law judge's analysis in this regard is sufficiently specific as to the weight given to Dr. Ayub's opinion and the reasons for assigning that weight, and it is clear that the administrative law judge considered the appropriate factors in evaluating Dr. Ayub's opinion. The Court also finds that the administrative law judge's reasoning is supported by substantial evidence.

As noted *supra*, plaintiff also challenges the administrative law judge's evaluation of the opinions of Dr. Season and Dr. Hershenson. *Statement of Errors*, p. 12. Dr. Season opined that plaintiff was "unemployed for 3 months due to orthopedic problems," *PAGEID* 303 (June 2008), "unable to work," *PAGEID* 608, 1012 (December 2009), 1010 (June 2010), and that plaintiff was disabled. *PAGEID* 1011 (March 2010), 1010 (June 2010), 1009 (March 2011). On June 3, August 3, and October 14, 2009, Dr. Hershenson opined that, due to medical care regarding "ongoing orthopedic issues," plaintiff was "unable to work" and would be reevaluated every two months regarding his abilities. *PAGEID* 605-07, 676, 692, 818. Dr. Season's and Dr. Hershenson's opinions that plaintiff was disabled or unable to work are "tantamount to a disability opinion, a matter reserved to the

Commissioner for determination." *See Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011). *See also Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112 (6th Cir. 2010) ("The applicable regulations provide that a statement by a medical source that the claimant is 'unable to work' is not a 'medical opinion[;] rather, it is an opinion on an 'issue[] reserved to the Commissioner because [it is an] administrative finding[] that [is] dispositive of a case, *i.e.*, that would direct the determination or decision of disability.'") (quoting 20 C.F.R. § 404.1527(e)(1)). Accordingly, Dr. Season's and Dr. Hershenson's opinions that plaintiff was disabled or "unable to work" are, "as a matter of law, 'not given[n] any special significance.'" *Payne*, 402 F. App'x at 112. The administrative law judge's decision to afford the opinions "little weight," *PAGEID* 208, was therefore not, as a matter of law, improper. *See Payne*, 402 F. App'x at 112.

The Court will now address plaintiff's argument that the administrative law judge erred in the hypothetical posed to the vocational expert. Specifically, plaintiff argues that the administrative law judge failed to incorporate restrictions related to plaintiff's reduced ability to concentrate and use of a cane for ambulation in the hypothetical posed to the vocational expert. *Statement of Errors*, p. 13.

Hypothetical questions posed to a vocational expert need not include every limitation proposed by the claimant or mentioned by a doctor; rather, the administrative law judge must include in the RFC

16

all the limitations found by the administrative law judge. *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Plaintiff does not argue that the administrative law judge's hypothetical did not include all the limitations actually found by the administrative law judge; the Court therefore views plaintiff's argument as a challenge to the RFC determination. Plaintiff also expressly challenges the RFC determination and argues that the administrative law judge "erroneously determined that [plaintiff] can perform light work despite substantial evidence of an impaired ability to stand and walk." *Statement of Errors*, p. 9.

The RFC determination is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); *Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004). It represents the most, not the least, that a claimant can do despite his impairments. 20 C.F.R. § 404.1545(a); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). In assessing a claimant's RFC, an administrative law judge must consider all relevant evidence, including medical source opinions, relating to the severity of a claimant's impairments. *See* 20 C.F.R. §§ 404.1527(d), 404.1545(a). Furthermore, courts have stressed the importance of medical opinions in determining a claimant's RFC, and have cautioned administrative law judges against relying on their own expertise in drawing conclusions from raw medical data. *See Isaacs v. Astrue*, No. 1:08-CV-828, 2009 WL

17

3672060, at *10 (S.D. Ohio Nov. 4, 2009) (quoting *Deskin v. Comm'r*

*Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008)).

In the case presently before the Court, the administrative law

judge found that plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b), except
> he is limited to lifting and carrying 20 pounds
> occasionally and 10 pounds frequently, standing and walking
> a total of 6 hours in an 8-hour workday, sitting for a
> total of 6 hours in an 8-hour workday, and pushing and
> pulling with his extremities without limitation, subject to
> the weight and frequency restrictions limiting his capacity
> to lift and carry. He is also limited to occasional
> climbing of ladders, ropes and scaffolds and ramps and
> stairs, as well as to occasional balancing, stooping,
> kneeling, crouching, and crawling and occasional reaching
> overhead, in front, and laterally with his right upper
> extremity. Mentally, the claimant is able to perform
> simple, routine, repetitive tasks involving occasional,
> superficial interaction with coworkers, supervisors, and
> the general public. He can perform work involving no
> strict time or production demands and involving no extended
> attention and concentration, in a work environment
> characterized by relatively static work processes and
> procedures.

*PAGEID* 207. In making this assessment, the administrative law

assigned great weight to the opinions of state agency physicians Dr.

Dubey and Dr. McCloud and incorporated their findings into the RFC

determination.

Plaintiff argues that the opinions of Dr. Ayub, Dr. Season, and

Dr. Hershenson "prove Plaintiff's inability to perform light work

activity." *Statement of Errors*, p. 10. However, as discussed *supra*,

the administrative law judge did not err in discounting the opinions

of Drs. Ayub, Season, and Hershenson. Plaintiff also argues that the

existence of bilateral knee and shoulder impairments necessitates a

18

finding that plaintiff could not perform light work. *See id.* This argument is unpersuasive, as the mere diagnosis of a condition is not determinative of the severity of the condition, *see Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) ("But not every diagnosable impairment is necessarily disabling."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(citing *Foster v. Brown*, 853 F.2d 483, 489 (6th Cir. 1988)), and there is substantial evidence in the record that plaintiff's impairments are not as limiting as he alleges.

Plaintiff next argues that "there was no limitation given that incorporated Dr. Ray's findings regarding Plaintiff's limitations in concentration." *Statement of Errors*, p. 14. Dr. Ray evaluated plaintiff on December 7, 2010 and opined that plaintiff's "concentration deficits could at times lower his work productivity." *PAGEID* 892. Dr. Ray further opined that plaintiff's "sleep deficits, hypervigilance, and concentration problems may interfere with his capacity to focus and stay organized at work." *PAGEID* 893. The administrative law judge's RFC determination would limit plaintiff to "simple, routine, repetitive tasks involving occasional, superficial interaction with coworkers, supervisors, and the general public. He can perform work involving no strict time or production demands and involving no extended attention and concentration, in a work environment characterized by relatively static work processes and procedures." *PAGEID* 207.

As noted *supra*, an administrative law judge is required to

evaluate every medical opinion, regardless of its source.  20 C.F.R. §
416.927(c).  As a one-time psychological examiner, Dr. Ray is properly
classified as a nontreating source.  *See* 20 C.F.R. §§ 404. 1502,
416.902 ("Nontreating source means a physician, psychologist, or other
acceptable medical source who has examined [the claimant] but does not
have, or did not have, an ongoing treatment relationship with [the
claimant].").  Although the administrative law judge's RFC
determination includes a limitation in concentration, the
administrative law judge did not expressly adopt the limitations in
Dr. Ray's opinion.  Ordinarily, an administrative law judge is not
required to accept medical opinions verbatim because the RFC
determination is an administrative finding of fact reserved to the
Commissioner.  *See* 20 C.F.R. §§ 404.127(d)(2), (3); *Edwards*, 97 F.
App'x at 569.  Nevertheless, a fair reading of the administrative law
judge's decision must demonstrate that the medical opinions of
nontreating sources were at least considered.  In the case presently
before the Court, there is no indication whatsoever that the
administrative law judge considered Dr. Ray's evaluation or medical
opinion.  The administrative law judge made no mention of Dr. Ray's
medical opinion, nor did he consider the evidence offered in support
of the opinion, how consistent the opinion is with the record as a
whole, or whether Dr. Ray was practicing his specialty.  *See Ealy*, 594
F.3d at 514 (citing 20 C.F.R. § 404.1527(d)).  Under these
circumstances, the Court concludes that the matter must be remanded
for further consideration of the opinion of Dr. Ray.

Accordingly, the decision of the Commissioner is **REVERSED** pursuant to Sentence 4 of 42 U.S.C. § 405(g) and this action is **REMANDED** for further consideration of the opinion of Dr. Ray.

The Clerk shall enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


August 8, 2014                          _____*s/Norah McCann King*_____
                                            Norah McCann King
                                     United States Magistrate Judge